IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | |
|---|---|
| GARY D. WARD, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    CIVIL ACTION NO. 5:04-1310 |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Standing Order, this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' Cross-Motions for Judgment on the Pleadings.

The Plaintiff, Gary D. Ward, (hereinafter referred to as "Claimant"), filed applications for SSI and DIB on June 2, 2003 (protective filing date), alleging disability as of March 31, 2003, due to back and right shoulder pain, left shoulder weakness, right arm spasms, and trouble walking. (Tr. at 72-75, 100-02, 266-67, 273-77.) The claims were denied initially and upon reconsideration. (Tr. at 72-75, 78-79, 273-77, 280-81.) On December 15, 2003, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 80.) The hearing was held on May 25, 2004 before the

Honorable Arthur L. Conover.[1]  (Tr. at 25-62.)  By decision dated June 23, 2004, the ALJ determined that Claimant was not entitled to benefits.  (Tr. at 12-22.)  The ALJ's decision became the final decision of the Commissioner on October 29, 2004, when the Appeals Council denied Claimant's request for review.  (Tr. at 5-8.) Claimant filed the present action seeking judicial review of the administrative decision on December 16, 2004 pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. §§ 404.1520, 416.920 (2004).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. §§ 404.1520(a), 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. §§ 404.1520(b), 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. §§ 404.1520(c), 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. §§ 404.1520(d), 416.920(d).  If it does, the

---

[1] A prior hearing on March 2, 2004, was continued to allow Claimant time to obtain representation. (Tr. at 12, 63-69.) Claimant obtained counsel and appeared at the supplemental hearing on May 25, 2004. (Tr. at 12, 25-62.) Prior to the hearing, Claimant's counsel produced mental health records from March 19, 2004, through May 10, 2004, and a "Medical Assessment of Ability to do Work-Related Activities (Mental)" from Dr. Angela K. Williams, M.D., dated May 11, 2004, with Evaluation Report dated April 6, 2004. (Tr. at 241-59.)

claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2004). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a).[2] First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to

---

[2] As noted above, these Regulations were substantially revised effective September 20, 2000. *See* 65 Federal Register 50746, 50774 (August 21, 2000).

consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.

(2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[3] Fourth, if the claimant's impairment(s) is/are

---

[3] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a

deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 13.) Under the second inquiry, the ALJ found that Claimant suffered from the following severe impairments: "chronic back pain, secondary to degenerative disc disease; chronic right shoulder pain, secondary

---

chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

to degenerative joint disease and a torn rotator cuff; coronary artery disease, status-post stent placement, and a depressive disorder." (Tr. at 13, 21.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 13.) The ALJ then found that Claimant had a residual functional capacity "to perform the physical and mental demands of work" with the following limitations:

> He can lift 10 pounds frequently and 20 pounds occasionally. He can stand 30 minutes at a time and sit 30 minutes to an hour at a time. He can occasionally balance, stoop, kneel, crouch, crawl, or climb stairs or ramps, but he can never climb ladders, ropes, or scaffolds. The claimant can only occasionally reach overhead with his right (dominant) arm. He needs to avoid concentrated exposure to hazardous work conditions. The claimant is limited to simple work tasks due to problems maintaining concentration.

(Tr. at 13.) The ALJ concluded, in view of Claimant's residual functional capacity and based upon the testimony of Vocational Expert ("VE"), Lisa J. Goudy, that Claimant could return to his past relevant work activities of a compressor operator and security guard, "as he actually did them." (Tr. at 14-15.) On this basis, benefits were denied. (Tr. at 21-22.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v.Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the

Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

Claimant's Background

Claimant was born on March 21, 1952, and was 52 years old at the time of the supplemental administrative hearing. (Tr. at 100.) Claimant has an eleventh grade education and a Generalized Equivalency Diploma. (Tr. at 132.) In the past, he worked as a supervisor, painter, security guard, compressor operator, and an apprentice in heating, venting, and air conditioning. (Tr. at 30-34, 121-22, 127.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision that Claimant can perform his past relevant work as a compressor operator and security guard is not supported by substantial evidence. Specifically, Claimant avers that (1) the ALJ relied on his own lay opinion concerning the severity of Claimant's mental limitations, (2) the ALJ failed to develop adequately the demands of Claimant's past relevant work, and (3) the ALJ failed to develop adequately the skills required to do Claimant's past relevant work. The Commissioner asserts that these arguments are without merit and that substantial evidence supports the ALJ's decision.

1. <u>Mental Impairment</u>.

Claimant contends that the ALJ substituted his views on Claimant's mental impairment for that of a trained professional when he rejected Dr. Williams' testimony on the basis that Claimant had not been in treatment for a sufficient period of time to assess his response to prescribed treatment, and failed to obtain an expert medical opinion. The Commissioner asserts that this argument is without merit.

It appears that Dr. Williams' Mental Medical Assessment of Ability to Do Work-Related Activities and corresponding notes from FMRS are the only evidence of record pertaining to Claimant's mental condition. The ALJ considered Dr. Williams' opinion in accordance with the special technique described above. The ALJ first detailed Claimant's pertinent symptoms, signs, and laboratory findings and determined that Claimant suffered from a medically determined mental impairment (major depressive disorder, single episode, moderate to severe, without psychotic features), which is evaluated under section 12.04, affective disorders. (Tr. at 20.) Specifically, the ALJ noted that Claimant first sought treatment at a mental health clinic in March, 2004, whereupon he exhibited "a dysphoric and anxious mood, restricted affect, variable psychomotor behavior, limited eye contact, and decreased amount of spontaneity." (Tr. at 20.)

Secondly, the ALJ assessed Claimant's functional limitations from his mental impairment. (Tr. at 20-21.) The ALJ noted that Psychiatrist Dr. Angela K. Williams, M.D., evaluated Claimant on April 6, 2004, and gave him a score of 50 on the Global Assessment of Functioning Scale. (Tr. at 20.) Based on this score, Dr. Williams opined that Claimant's "functioning was seriously, bordering on moderately impaired." (Tr. at 20.) The ALJ further noted that historically, Dr. Comeaux described Claimant as appearing depressed in September, 2003, and that Claimant alleged

he had experienced pain and psychosocial stressors emanating from his depression throughout his period of disability. (Tr. at 20.) Nevertheless, the ALJ determined that because Claimant's treatment record is void of mental health treatment prior to April, 2004, and the severity of his symptoms as determined by Dr. Williams was based primarily on Claimant's self-report, Dr. Williams' mental functional capacity assessment could not be accepted as representative of his level of functioning. (Tr. at 20.) Consequently, the ALJ determined that based on Claimant's self-reported activities, he had not exhibited more than mild restrictions in activities of daily living and maintaining social functioning and moderate difficulty in maintaining concentration, persistence, or pace. (Tr. at 21.) The ALJ found no evidence of decompensation of extended duration. (Tr. at 21.) The ALJ thus limited Claimant to performing simple work tasks due to his problems maintaining concentration. (Tr. at 22.)

It is apparent from the record that the ALJ based his severity rating on Claimant's testimony that his depressive symptoms had improved with treatment. (Tr. at 21.) Claimant testified that after he began treatment, he did not feel as depressed as he did before treatment, and that he experienced reduced instances where he isolated himself and cried. (Tr. at 50.) The ALJ also noted however, that due to the short period of treatment, he was unable to assess Claimant's response to the prescribed treatment. (Tr. at 21.) The ALJ found that Claimant independently conducted his activities of daily living and noted that he was able to travel independently. (Tr. at 21.) Claimant testified that he mowed the lawn on a riding mower, walked, went grocery shopping with his mother, performed little housework, and occasionally socialized with a friend. (Tr. at 44-48.) Although the ALJ found that Claimant's primary complaints of limitation were based on his physical condition, the ALJ found that due to his divorce, bankruptcy, and his mother's declining mental capacity, he was easily

distractible. (Tr. at 21.)

The undersigned finds that the ALJ did not substitute his own opinions for those of Dr. Williams but weighed the opinions of Dr. Williams against other evidence of record, including Claimant's testimony at the supplemental hearing, to conclude that Dr. Williams' opinions should be rejected. The undersigned finds that the ALJ's decision is supported by substantial evidence and in accordance with applicable law and regulations.

Title 42 U.S.C., § 421(h) provides:

An initial determination under subsection (a), (c), (g), or (i) of this section that an individual is not under a disability, in any case where there is evidence which indicates the existence of a mental impairment, shall be made only if the Commissioner of Social Security has made every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment.

42 U.S.C. § 421(h) (2004). Title 20, C.F.R., § 404.1520a(e)(2), which interprets § 421(h), provides that at the ALJ hearing level, the ALJ's decision "must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment." Furthermore, if the ALJ "requires the services of a medical expert to assist in applying the technique but such services are unavailable, the [ALJ] may return the case to the State agency . . . ." 20 C.F.R. § 404.1520a(e)(3). As the Commissioner argues, the language of the regulations demonstrates that the ALJ was not required to obtain a mental health specialist to support his analysis when the record otherwise contained substantial evidence to reach a decision. In White v. Barnhart, 321 F.Supp.2d 800, 804 (N.D. W.Va. 2004), the District Court found that the ALJ, in failing to call upon a psychiatrist or psychologist to perform the psychiatric review technique or complete a residual functional capacity assessment, improperly substituted his own opinion for that of a medical opinion, and remanded the matter to

the Commissioner for further proceedings. In White, however, the evidence indicated that the claimant's condition continued to deteriorate with treatment and no medical evidence indicated how the claimant's agoraphobia and panic and anxiety disorders permitted him to be a productive member of the workforce. Id. Furthermore, the ALJ offered no explanation for his analysis that if the claimant was on medication, he would be a productive member of the workforce. Id. In the instant case, the ALJ properly explained his analyses of both Claimant's improved condition in conjunction with the short period of treatment and his limitations resulting from his depressive disorder. In Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986), the Fourth Circuit noted that an ALJ has a "responsibility to help develop the evidence." The ALJ has "a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." Id. at 1173. When the evidence is inadequate, the ALJ "is free to contact physicians, psychologists or other medical sources . . . *see* 20 C.F.R. § 404.1512(e), the ALJ does not otherwise have an obligation to obtain additional information if the record is adequate to make a determination regarding a disability claim." France v. Apfel, 87 F.Supp.2d 484, 489-90 (D. Md. 2000). Accordingly, in view of the foregoing, the undersigned finds that the ALJ properly evaluated Claimant's mental impairment and did not substitute his opinion for that of a medical opinion. Claimant's argument on this point is without merit.

2. Past Relevant Work.

Claimant alleges that in view of his moderate limitations in concentration, persistence, or pace, the ALJ's decision that he could perform past relevant work is not supported by substantial evidence. At step four of the sequential analysis, the ALJ must determine whether the claimant's

impairments prevent the performance of past relevant work. Past relevant work includes substantial gainful employment performed within the past fifteen years, which lasted long enough for the claimant to have learned how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). To determine whether a claimant can perform past relevant work, the ALJ must compare the claimant's residual functional capacity assessment with the physical and mental demands of the past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and (f), 416.920(a)(4)(iv) and (f) (2004). Social Security Ruling ("SSR") 82-62, 1982 WL 31386 (Aug. 20, 1980), deals with "Disability Claimant's Capacity To Do Past Relevant Work, In General." The Ruling indicates that an RFC "to meet the physical and mental demands of jobs a claimant has performed in the past (either the specific job a claimant performed or the same kind of work as is customarily performed throughout the country) is generally a sufficient basis for a finding of 'not disabled.'" 1982 WL 31386, * 3. The Ruling goes on to state that the Claimant "is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work." Id.

"RFC represents the most that an individual can do despite his or her limitations or restrictions." See SSR 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2004). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a

work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996). Based on the medical evidence and the Claimant's and VE's testimony, the ALJ found that Claimant had an RFC to perform work with the following limitations:

> He can lift 10 pounds frequently and 20 pounds occasionally. He can stand 30 minutes a time and sit 30 minutes to an hour at a time. He can occasionally balance, stoop, kneel, crouch, crawl, or climb stairs or ramps, but he can never climb ladders, ropes, or scaffolds. The claimant can only occasionally reach overhead with his right (dominant) arm. He needs to avoid concentrated exposure to hazardous work conditions. The claimant is limited to simple work tasks due to problems maintaining concentration.

(Tr. at 13.)

In determining the physical and mental demands of Claimant's past relevant work, the ALJ relied on the testimony of Claimant and the VE. With respect to the security guard work, Claimant testified that he patrolled mine property in a truck and spent time in an office doing record keeping. (Tr. at 14, 31, 54-55.) He acknowledged that he was not required to perform significant lifting. (Tr. at 14, 54.) He further testified that he considered the job stressful because he was responsible for monitoring all the happenings on the mine property. (Tr. at 14, 57.) Due to this stress, Claimant expressed doubt as to whether he could maintain the required concentration to perform the job. (Tr. at 14, 54-56.) Claimant testified that he left this job when the mine went bankrupt. (Tr. at 32.) Concerning the compressor operator job, Claimant testified that he operated two compressors, which required him to take hourly readings on the compressors and coordinate operations with other workers. (Tr. at 14, 56.) He stated that he was not required to perform maintenance on the compressors. (Tr. at 14.) Claimant testified that he received ten hours of on-the-job training, in

addition to experience he gained when working on the railroad.[4] (Tr. at 56.) He further testified that the job did not require any significant sitting, standing, or lifting, but noted that in his free time, he assisted other workers with the compressors which required lifting of 100 to 150 pounds. (Tr. at 14, 55.) This lifting, however, was not part of the normal duties of the job. (Tr. at 55-56.) Additionally, Claimant testified that the careful attention required in monitoring the compressors and the coordination with the functions of other operators caused the job to be stressful. (Tr. at 14, 57.) However, Claimant testified that he left this job for more pay, not because it was stressful. (Tr. at 32.)

Based on the Claimant's description of his past jobs, as he performed them, the VE testified that both jobs were unskilled, with the security guard job performed at either the sedentary or light level of physical exertion and the compressor operator job at the light level of physical exertion. (Tr. at 14, 58-59.) The VE noted that both jobs allowed a sit-stand option at will. (Tr. at 14, 60.) The VE further testified that Claimant's prior work was generally consistent with the descriptions of the jobs contained in the Dictionary of Occupation Titles ("DOT"). (Tr. at 59.) When asked to consider a limitation of "simple tasks because of concentration problems," the VE replied:

> Well, I would say probably if the concentration problems were I would say moderate or more, certainly the security job would not be a good idea. You have to be alert for that, of course, and on the - - and the compressor operator job, if he was really monitoring those machines and had to, you know, take the readings and so forth, I would say probably if this person had a concentration problem that was moderate or more, certainly those jobs - - it would probably be difficult to do those jobs effectively.

(Tr. at 60-61.) Although Claimant's past relevant work involved simple tasks, the VE was concerned

---

[4] Claimant's prior work on the railroad is not referenced in his applications for benefits, which leads the undersigned to conclude that the work was performed more than fifteen years ago.

14

that Claimant may not have had the "focus" and "alertness" required of the work, "especially for the security job." (Tr. at 61.)

After the hearing the ALJ determined that pursuant to the DOT, the security guard job was semi-skilled and performed at the light level of physical exertion, while the compressor operator is considered skilled and performed at the medium level of physical exertion. (Tr. at 14.) Pursuant to SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000), the ALJ explained that the VE's testimony regarding Claimant's physical and mental demands on his past relevant work was based upon a characterization of the jobs as Claimant actually performed them. (Tr. at 15.) Thus, the ALJ did not accept the VE's testimony concerning Claimant's capacity to perform the jobs as generally required by employers throughout the country. (Tr. at 15.) Rather, the ALJ accepted the VE's testimony based on the jobs as Claimant performed them. (Tr. at 15.) Based on the testimony from Claimant and the VE, the ALJ concluded that Claimant retained "the residual functional capacity to perform his past relevant work activities as he actually did them." (Tr. at 15.)

Claimant alleges that the ALJ improperly concluded that his moderate concentration impairment would not affect his performance of past relevant work because the two jobs involved simple tasks. He asserts that the ALJ failed to discuss the VE's admonition that moderate concentration problems would render difficult his ability to perform effectively his past relevant work. The Commissioner argues that under SSR 82-62, a VE's testimony is generally not necessary at step four of the sequential analysis. Rather, the Commissioner avers that the primary source for vocational documentation is the Claimant and that the ALJ properly based his decision on Claimant's testimony. Furthermore, the Commissioner avers that the VE neither found that Claimant's moderate limitations in concentration, persistence, or pace precluded him from

performing, nor rendered him unable to perform his past relevant work. Rather, the VE testified that these limitations would make it "difficult" to perform his past work.

In <u>Smith v. Bowen</u>, 837 F.2d 635 (4th Cir. 1987)(per curiam), the United States Court of Appeals for the Fourth Circuit held that it was "improper for the ALJ to rely on the vocational expert's testimony in determining that Smith could return to her past job." <u>Smith</u>, 837 F.2d at 637. The Court noted that "a vocational expert enters the sequential analysis for determining disability *after* a claimant is found unable to do her past relevant work." <u>Id.</u> (Emphasis in original); <u>see</u> <u>also</u> 20 C.F.R. §§ 404.1566(e), 404.966(e) (2004). The Commissioner subsequently adopted the holding of <u>Smith</u> with respect to cases filed within the Fourth Circuit. Acquiescence Ruling ("AR") 90-3(4), 1990 WL 335579 (July 16, 1990). On August 26, 2003, following amendment to 20 C.F.R. §§ 404.1560(b) and 416.960(b), the Commissioner rescinded AR 90-3(4) and declared that VE testimony may be utilized at step four of the sequential analysis. 68 Fed. Reg. 51317-02, 2000 WL 22001985 (Aug. 26, 2003). Section 404.1560(b) provides that the Commissioner may utilize the services of a vocational expert to determine whether a claimant can perform past relevant work, given the claimant's residual functional capacity. 20 C.F.R. § 404.1560(b).

> A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy. Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work. In addition, a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claim actually performed it or as generally performed in the national economy.

<u>Id.</u>

Based on the foregoing, the undersigned finds that pursuant to §§ 404.1560(b), 416.960(b),

16

the ALJ was permitted, but not required, to utilize the services of a VE to assist in determining whether Claimant could perform his past relevant work. It is evident that the ALJ relied on the VE's testimony in determining the physical exertion and skill levels of Claimant's past work, based upon Claimant's description of his past work. It is equally evident that the ALJ limited Claimant to performing unskilled, "simple tasks" to compensate for his moderate limitations in concentration. "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength." 20 C.F.R. §§ 1568(a), 416.968(a) (2004). Although unskilled work, by definition, encompasses simple tasks which require little or no judgment, concentration may still be required to perform a particular unskilled job. See e.g., Bielat v. Commissioner, 267 F.Supp.2d 698, 702 (E.D. Mich. 2003)(finding that a claimant's ability to perform unskilled work does not sufficiently reference his inability to concentrate as required for particular jobs, such as security camera monitor)(*citing*, Newton v. Chater, 92 F.3d 688 (8th Cir. 1996)(holding that a reference to "simple jobs" was insufficient to constitute inclusion of the impairments or deficiencies in concentration noted by the ALJ); McGuire v. Apfel, 1999 WL 426035 at * 15 (D. Or. 1999)(holding that "simple work" was insufficient to describe claimant's deficiencies in concentration, persistence, or pace resulting in failure to complete tasks in a timely manner)). While the ALJ was not obligated to adopt the conclusions of the VE indicating that Claimant's moderate concentration problem would render difficult his ability to perform past relevant work, the ALJ was nevertheless required to explain how Claimant's concentration would not affect his ability to perform past work. In his decision, the ALJ specifically found credible Claimant's "allegation of distractibility . . . in light of his cumulative medical and personal problems, which include divorce, bankruptcy, and now his mother's needs." (Tr. at 21.)

Other than referencing "simple tasks," the ALJ did not analyze, or otherwise explain, how the jobs of a compressor operator and security guard, which according to the VE required focus and alertness, would not be affected by his concentration deficiency. Accordingly, the undersigned finds that the ALJ's decision that Claimant could perform his past relevant work is not supported by substantial evidence. Because the undersigned finds Claimant's first argument with respect to his past relevant work determinative of the outcome, the undersigned does not address the remaining argument.

Based upon the foregoing, the undersigned respectfully **recommends** that the District Court **find** that the ALJ's decision is not supported by substantial evidence due to the ALJ's failure to explain Claimant's limitation in concentration with respect to his ability to perform past relevant work. It is further **recommended** that this case be remanded to the Commissioner for further administrative proceedings.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **GRANT** the Plaintiff's Motion for Judgment on the Pleadings, **DENY** the Defendant's Motion for Judgment on the Pleadings, **VACATE** the final decision of the Commissioner and **REMAND** this case for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation

within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Goodwin, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

Date: February 23, 2006.

R. Clarke VanDervort
United States Magistrate Judge